Good morning, your honors. Good morning, Mr man. Will you speak with us please. And I began, I'm sorry. Yes. Okay, I guess I may please speak with us. Okay. Good morning, your honors and may it please the court, Jonathan man of losses of Robin bresky, on behalf of the appellant Joanna vibe, enter. I'd like to reserve four minutes of my time for rebuttal. As the court is aware this is an appeal of the district court order dismissing misenters suit, pursuant to the fugitive disentitlement doctrine. I think the parties agree on the standard that the dismissal of a civil action on fugitive disentitlement grounds requires that the plaintiff is a fugitive, that his fugitive status has a connection to the civil action, and that the sanction of dismissals necessary to effectuate the concerns underlying the doctrine. And we respectfully submit to the court that in the present case, the district court abuses discretion and dismissing the center so that if your client came back to Florida, she'd be arrested when she, because the police could act on the referral to law enforcement that was issued by the family court after it found her in contempt, and in violation of its anti stalking injunction. I think that she could be arrested. Your Honor, the subject to arrest. She's subject to arrest the order of referral to law enforcement that was issued on, I believe it's October 31 2017 as something that the district court struggled with, because that order. The operative permits her address and her arrest and she knows about it. Talk to me to see how she's not a fugitive. As she remains in another country. Our position is that she certainly has been found to be in contempt of the family court orders. Those orders are what they are and they speak for themselves. Well, let me stop you there for a second I'm sorry but what what is there in the record about the state court finding her an indirect criminal contempt I know the state court issued a show cause order. When did it issue an order finding her an indirect criminal contempt if at all. Did that happen. I believe the answer is no your honor, but she was not found to be an indirect criminal contempt there's an order granting the motion for contempt. And that was, that was July 18 of 2017. Then there's the subsequent order of referral to law enforcement on October 31 2017, and there's an order to show cause why she shouldn't be held in indirect criminal contempt right. But I did, I might be mistaken but I did not see, and it may not be necessary I mean your opponent might be right on this but as a matter of just historical fact. Do we have an order from the state court, holding your client in indirect criminal contempt. My, I believe the answer is no. That's what I thought from my reading record it may not be necessary but I thought that there was no order from the state court, holding her an indirect criminal contempt. Okay, I'll ask Mr Madison the same thing that that that was my understanding. So let me come at the question this way. We know that in order to apply the fugitive disentitlement doctrine three things have to be established. The district court said they were the first was that the plaintiff is in fact a fugitive. You say the district court was wrong for two reasons. One, she lacked the intent necessary. And to know when bench warrant or arrest warrant had been issued in the case. The district court found she constructively fled from the Florida family court. The district court referenced the fact that on multiple occasions. She ignored the state court orders and took her children abroad and reach the conclusion that she had absconded. Is that a finding of fact or is that a mixed question of law in fact, I asked the question because it seemed to me, under the circumstances of this case, that was essentially a fact bound question. And if that's right, we would only review it for clear error. And so I'm asking a is that right and be. If so, where's the clear error in the district court finding. I believe that your honors corrected that that would be a factual finding. That's a factual finding that was made by the district court entirely based on the state court orders that were that were in the record. The, the order of dismissal came about following a status conference in the district court, that the, the hearing was only noticed for a status conference and miss enter was not ordered to be at that hearing. Why is that relevant. Well, because in cases such as Pessin versus Rodriguez, which was relied on by the police and relied on heavily by the district court and and other cases on this on this topic of fugitive disentitlement doctrine, you have a finding To show me is that the district courts determination conceding that it was a fact finding, at least under the circumstances that there was clear error. Wasn't there a fair amount of evidence that supported the district court determination that enter was in fact a fugitive, including, among other things. Looking at the state court record and her failure to comply with a series of state court requirements, including presence participation in hearings her absence are taking the kids and going abroad, whether the England or Finland or somewhere else. Why couldn't the judge find as a fact. That enter was a fugitive. I believe that the characterization that she's a fugitive is a legal determination that's not met here. That would be my position, Your Honor, that the, the findings that she had violated the state court orders. Are factual, but the characterization that misenters a fugitive for the purposes of the fugitive disentitlement doctrine is a legal conclusion, whether someone fled from a jurisdiction of a court. It's certainly a fact based question, isn't it. Yes, Your Honor, I would agree with that. Determinations of fugitive status can also can also exist ex post. Right. So you can flee the jurisdiction at a time when you are not Maybe necessarily prohibited from going elsewhere. But then you can be found to be a fugitive. If the court issue some sort of order or process and you don't return That's at least my understanding of our cases. Why isn't that scenario met here. In other words, she may not have been a fugitive. When she initially left with the children for England or other parts, but given the number of orders issued afterwards. The orders finding that she's in violation. The order saying that she's engaging in contemptuous type conduct the orders referring her to law enforcement. Why doesn't all of that as a mix support the district court's decision on fugitive status. And that that is what happened here. Factually, Your Honor, in terms of she leaves, June 1 2017 at that point, there's no order of contempt, let alone order of referral to law enforcement, those come later after she already had left the jurisdiction. But I think the answer to Your Honor's question is lies again in that the conclusion that she's a fugitive for purposes of the fugitive disentitlement doctrine is a legal. It's a legal conclusion, the application of which arises out of situations where you have a criminal defendant who flees and then appeals their criminal can you well I should back up you have a can you have a conviction in a criminal case criminal you have a direct appeal. That's the classic case. And when we're talking about trying to apply that to a case where we have a family law litigant who's found in contempt, and we do not have a bench warrant for an arrest. We have a order of referral to law enforcement which operative paragraph of which says it's referring the case to law enforcement to investigate respondents acts. You can see that it makes her subject to arrest that based on that referral. She can be arrested. Thank you. In other words, law enforcement law enforcement could arrest her based on that referral. I thought your better argument would be that although that is a possibility. There's been no court order mandating her arrest. There's no warrant or arrest warrant per se. And you seem to suggest in your brief that that is a prerequisite. Right, we. I wouldn't say that it's necessarily a prerequisite, but in this case, where, in this case where you do not have that we are positions that she could not legally be deemed a fugitive for purposes of the doctrine. Let me ask just one very quick question. The second element is that NS fugitive status has a connection to the civil action. Do you interpose any objection in your blue brief to that. Did you raise it in your blue brief. We did not specifically raise that in our, at the end of it. Why don't we do review that claim when it only came up for the first time in reply. I can only say that that they, the two questions are intertwined to some extent as to whether or not she's a few as to whether or not she's a fugitive. That but this element is different, whether fugitive status assuming argue when they'll be evidence supported that finding has a connection to the civil action that requires a judge to make an examination of the state civil action and see whether there's a connection. The judge did that. And when I read the blue brief, I did not see any, any objection or quarrel with that determination. Am I right about that. That's accurate, Your Honor. Yes. I didn't draft I did not draft the brief I'm arguing it but thanks. Okay, Mr man you say four minutes for rebuttal. Mr hyacinth. Thank you, Your Honor, may it please the court. This is Scott hyacinth. I'm the attorney representing the appellee Mr Martin in this. My name is Scott hyacinth I'm representing the appellee Mr Martin in this matter. And I just like to begin at the beginning, which is as opposing counsel said June 1 2017, which is the date that the appellant has admitted that she fled the jurisdiction she absconded from the jurisdiction with two minor children that she shares with with my client Mr Martin. And she has never returned to this jurisdiction, and she had not returned to this jurisdiction by the time that she had filed this federal lawsuit in 2019 and she has not returned to this jurisdiction today. When was this when was this lawsuit filed. April of 2019. And I think what's what's important and I think the court is is highlighted this in in the prior argument is what was before the district court at the time it ruled motion to dismiss based on the future of disentitlement doctrine. And those are the facts that were before the court that this this appellant and fled the jurisdiction, her flight, and her conduct before and after her flight violated I believe the as the state court said, virtually every court order entered by the state And based on that conduct the court entered a civil contempt order, the court entered a referral to law enforcement, that it should be noted, it is undisputed by the appellants, and by the parties that that the appellant is subject to arrest, based on on the language of that order. In page thing Mr hyacinth as actually issuing an arrest warrant. Or put more artfully. Was there any requirement on the part of the state family court judge to issue a warrant of arrest, having a already found civil contempt and be referred to law enforcement, did they did you have to go to the third step and say, here's an arrest warrant I'm signing it. For the purposes of the future disentitlement doctrine. No. And I believe if the Barnett case I think is helpful in this, where the this this court found that the, the two parties in Barnett were fugitives from both a contempt order and the arrest warrant. There's no authority that that has been cited by by appellant and none that I have seen that say that a an arrest warrant is a condition precedent to a the future disentitlement doctrine what the what the what the what the law says is that in a civil action, where the plaintiff is in violation of court orders and evading arrest. And in this instance, we it is uncontested that that that the appellant will be subject to arrest, based on the law enforcement referral, as she stated in her statement of facts, irrespective of perhaps what the argument was earlier today. And it is essentially uncontested that that her, her staying away from the state of Florida is is conduct that is evading arrest as as Jordan pointed out, even, even though the court the contempt orders and the order to show cause and the law enforcement referral were all were entered after her flight. As the Barnett case shows and his peasant. I don't that the court can infer from their absence that a that a fugitive is intending to stay away or staying in hiding to avoid a an ex post. Let me put the question this way, let's suppose the Immigration Service learned that she was about to get on a plane and fly from London Heathrow to Miami International Airport. And they turn that information over to Metro day sheriff. And the sheriff went to the airport, met her when she came in and arrested her. Would he be free to do that. Would that be a lawful arrest, based on the practice you've described. Based on the, on the court orders entered in this case that are in the record. Yes, I believe that I believe that would be a valid arrest that would, that would satisfy the Fourth Amendment. Well, and that can your opponent hasn't contested. As I understand. Correct, correct. And as I said, as I understand it, your opponent's argument is that law enforcement wouldn't be required to arrest her. But it could arrest her. That appears to be the argument made, you know, in oral argument here I'm not I'm not sure that was really articulated in the brief but but as I said when you look at when you look at the brief the brief says, and I can quote it here. The referral of law enforcement authorized any Florida law enforcement officer to detain either if located in the jurisdiction, that's from the statement of facts of the appellant, so it's on page six of the blueprint. Correct. So, so, so it's undisputed from the appellant that the effect of that order would be that she could be detained. Anytime that law enforcement finds her. Let me ask you a question. Most of our cases under the doctrine involve dismissal of an appeal or of a district court action in and of itself because of the application of the fugitive disentitlement doctrine. We have very few cases dealing with the effect of flight and fugitive status in one case, requiring dismissal in a second case. But we do have one case called FTC versus Pharaoh from 1999. The citation is 178 F third 1159. That's a published case in which an individual was charged by indictment in the southern district of Florida, with a number of crimes related to bank fraud and wire fraud. The person was in Saudi Arabia did not come back was deemed to be a fugitive. But the case that was at issue was not that case, but a civil case filed by the FTC against the same individual, seeking millions of dollars in damages based on that same type of conduct the breach of fiduciary duty, common law fraud wire fraud, etc. The district court found that the fugitive disentitlement doctrine applied to the civil case, and basically did not let that fugitive defendant defend the civil case brought by the FTC, we reversed. Now, we made a point of saying that was a case in which the fugitive was a defendant in a civil case that he didn't file. But we nevertheless said that the doctrine was inapplicable and should not be used in that circumstance to prevent an avowed fugitive from defending a related civil suit. How do you distinguish that case from this one, is it only the fact that Miss Viva enter is a plaintiff in the suit against Mr. That that is the, in my view, that's the, the, the significant distinction yes because the principle that the future disentitlement doctrine is try is is trying to support this this doctrine. More here. I mean, it seems to me that Miss five enters is is attacking the family court proceedings, from which she is a future. It's not just that she's a plaintiff. It's that she's attacking the very proceedings that she's trying to evade. That's correct, your honor. And I think there's two there's two issues going on here is is that is that either in the test for for When the fugitives entitlement doctrine is applicable. The second element is a connection between the the plaintiffs. The underlying lawsuit and the fugitive status and and particularly here, the plaintiff is is basically a waging a collateral attack on the state court and the state court. Judgments and the and the end of settlement agreement that forms the state court judgments of through the district court. And I think that makes it a very distinguishable from the FDIC case and the fact that that the principle that is is animating the this doctrine. Is that a that a fugitive can't can't come to court and get the benefits of court and and then simultaneously basically offend the dignity of the court by by by being fugitive at the same time. Now in the FDIC case, there was no attempt to get affirmative relief from the court, it was, it was a thing applied to prevent someone from defending themselves against a civil action. If there had been a lawsuit by Mr for own against the federal government. Declaim, for instance, to prevent the FDIC from doing what it wanted to do. I think that case would have been analyzed differently because the, the, again, the, the idea is that is that a party can't Thumb its nose at the court system and and then simultaneously seek affirmative relief from it. I think there's a there's a US Supreme Court case called Deegan that also talks about if it's in a defensive position. It's a distinguishable for purposes of the doctrine. Okay. And to get back to the judge Marcus you asked about it, you know, the, the idea of there's a connection is there, what is the connection between the, the underlying litigation and state court, and the lawsuit that was before Judge Ruiz, when he when he dismissed it and if you look at the, the allegations in the complaint. Most of the allegations are basically attempts to to relitigate issues that were in state court, she specifically alleges for instance, violations or breaches rather of the settlement agreement that is within the jurisdiction of the family court. In fact, there's a there's a specific allegation that the appellant alleges in the complaint that she was forced to flee the United States because of the unfair litigation practices of Mr. So, she in her complaint she literally tries to recast her fugitive status in some defensive way that it was a that it was she was compelled to leave the leave the jurisdiction, because of the, because of the nasty behavior of Mr. Martin's lawyers if you were to believe it, and that's the that was the basis of an abusive process claim and a conspiracy claim in her complaint. So, to the extent that there is a challenge to the connection nexus prong of the The prefatory question is whether or not that's even before us, as I understood it and as your colleague agreed, quite candidly, no objection was made in the blue brief to the determination by the trial court that enters fugitive status indeed had a connection to the civil action. He never he never really objected, certainly not in the blue brief that buys to put you on notice before you filed a response to that. So I guess what I'm asking is, do I even have to examine whether the district court got it right, it may not be a hard question going to the merits, but is that properly even before me. It is not before the properly before this court. In fact, the the only the only issue raised in in before the district court in the response to the motion dismiss was a challenge to the fugitive status prong of the, of the, of the fugitive disentitlement doctrine. In fact, the the argument that was raised before the district court as to that prong is not the argument that was raised in the brief or an oral argument that that argument was based purely on the, on the notion of intense to flee having to be established, which is the, I think the point that that Judge Jordan was was referring to about the intent to flee can be found after the fact, if in fact the party declines to return after there's a contempt order in order for arrest is is entered He did he did address the third prong whether dismissal was necessary to effect the concerns of this this equitable doctrine. And in that regard, what he says, essentially, is that the dismissal was too blunt an instrument to use here and paired her due process rights, do you want to address that for a moment. Yes, thank thank you. The, you know, the, the principles again that the purposes of the fugitive disentitlement doctrine are, among other things, is our to to preserve the dignity of the court to address the difficulty in enforcing judgments. Promote the efficient operation of the courts and discourage flight from justice and to avoid prejudice for the party and avoid the inequity of allowing a fugitive to basically reap the benefits of court without the justice system without without honoring Adverse rulings and judge Ruiz in his order specifically found the latter to that it would be inequitable to allow this fugitive who's again it's been at that time had been on the lam for about two years with with Mr. Martin's daughters to come to court and and seek relief, and then without any expectation that she would actually abide by any court orders and as evidence of that among other things he judge Ruiz noted that when there is the status conference that was set. He did the district court communicated with chain would communicate with the appellant pelleted call chambers to set up a telephone conference from parts unknown she she is certain she's in England but but there's really no evidence of that but that's true. And, and she said she was she was intended to appear at that hearing. And then she didn't appear. And in the courts order the court relied in part on that as evidence that that there's no real effort to appear on her part. I'm sorry. Your time is expired Mr Hyacinth. And we understand your argument. Mr man you've saved four minutes for rebuttal. Thank you, Your Honor, I'll, I'll address what was being discussed just just most recently regarding the, the center, not appearing at the status conference by telephone, I think I would say that she she was not ordered to to appear and that's a trial. The father files and I Cara petition to have the children returned to him in Venezuela court grants the petition orders the children return the mother fails to comply, the court then sets two different, different conferences at which the, the mother specifically in contempt and the court issues and arrest warrant, which again is, is different than what we have in the instant case where this center is not in violation of any of the orders of the district court, the judge Ruiz discussed in the transcript. At the, at the status conference, he said, you know, I considered to paraphrase, he said I considered ordering that Miss center appear before the court physically in person within 10 days, and I decided not to do that because the police were trying to move quickly on this on this dismissal this dismissal motion. But isn't the critical, I understand your position on that. I agree with you I don't think she violated any direct order of judge Ruiz is in this case, but isn't the real question whether or not she violated the state court orders to such a degree that she was held in contempt, and that law enforcement was authorized to arrest her isn't that the critical question. I think that the legal question goes further than what your honor just stated as as I, as I tried to explain earlier that we're talking about when we're talking about application of the fugitive disentitlement doctrine our position is that this, what, what the district court did in this case represents an extension of that doctrine, to where you have this, the state court findings, as your honors discussed, but that here we have the district court in which she has not in which Miss center is not violated any of the courts orders, and the district court solely basing its findings on what happened in the, in the state court and the judge do just that. Why couldn't the district judge in making the determination about whether or not she was a fugitive focus on her conduct before the state court, and the orders that the state court had entered holding aside completely her failure to appear in the federal case. I would point out that she was having that the, the, the hearing, the stat, it was only a status conference and she was not ordered to appear before the district there was no, there was no evidentiary. You know, I'll say that she specifically requested to participate telephonically and then failed to do so. Didn't she. That's correct. I mean she engaged in it seems to me the same kind of gamesmanship that she had been engaging in in the state courts, or at least that judge Ruiz could certainly have thought that's where this is going. But that gets back to Judge Marcus says question. I mean, he could just look at what she did in the state court, couldn't he. I believe that she. Well, he could, but as I said, legally. Couldn't he counsel infer the requisite intent from the events that he saw in the state court. And that's a fact question. That's a fact question. But the, again, our position is that the, it's a legal question to label her a fugitive and that that was not met here. Okay. I think we understand your case, Mr. The next one this morning.